O. H. NELSON, Respondent, v. ST. JOSEPH & GRAND ISLAND RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, June 10, 1918.

1. **WAGES: Interstate Carrier: Overtime.** The plaintiff sued to recover wages from defendant, under the Adamson eight-hour law the amount of overtime from January 1, 1917, to May 19, 1917. The case was tried on an agreed statement of facts, the defendant contending that the act did not apply to the plaintiff's contract of employment. *Held*, that the plainiff was entitled to recover for the excess time figured correctly on the *pro rata* basis of the contract rate for regular time.

2. ———: ———: ———. The Adamson Law merely substituted eight hours of labor as a day's work for the purpose of measuring the plaintiff's compensation as necessary for day's wage, with further requirement that he should not receive, for said eight hours' labor less that he had received for his specified day's task, and if it necessarily required more than eight hours to perform the specified task he should be paid *pro rata* for overtime.

Appeal from .Buchanan Circuit Court.—*Hon. L. A. Vories,* Judge.

AFFIRMED.

*Culver & Phillip* for respondent.

*R. A. Brown* for appellant.

TRIMBLE, J.—Plaintiff, an employee engaged in the operation of defendant's interstate passenger train, brought this suit to recover overtime compensation claimed to be due under the Act of Congress of September 3, 5, 1916, known as the Adamson Law. [39 U. S. Stats. 721, c. 436.]

So far as applicable to this case, said Act provides that beginning January 1, 1917 "eight hours shall, in contracts for labor and service, be deemed a day's work and the measure or standard of a day's work for the purpose of reckoning the compensation for services of all employees who are now or may hereafter be employed" by any railroad interstate carrier (with certain exceptions not material to this case) "and who are now or may hereafter be actually engaged in any capacity in the operation of trains" in interstate and foreign commerce.

Section 2 of said Act provides for the appointment of a commission by the President to observe the operation and effects of the institution of the eight-hour standard workday, during a period of not less than six nor more than nine months, and to report in thirty days thereafter.

Section 3 provides that pending said report, and for a period of thirty days thereafter, the compensation

of railway employees subject to the Act for a standard eight-hour workday should not be reduced below the present standard day's wage "and for all necessary time in excess of eight hours such employees shall be paid at a rate not less than the *pro rata* rate for such standard eight-hour workday."

Plaintiff's contract of employment was made in December, 1916, that is, after the Act was passed; and the services for which overtime compensation is herein sought were rendered between January 1, and May 19, 1917. So that no question of plaintiff's right to recover can arise over the character of plaintiff's services or the period during which they were rendered or the *status* of the defendant as an interstate carrier subject to the Act. The sole contention made by defendant is that the Act does not apply to plaintiff's contract of employment. Defendant bases this contention upon the fact that there is no provision in the contract for overtime compensation nor clause defining what shall constitute "a day's work," and upon the claim that the contract fixed plaintiff's compensation at a stipulated sum per calendar month. The contention, in reality, rests wholly upon this last claim. For, the absence of any express provision in the contract relating to overtime compensation or defining a day's work must be deemed to have been urged only in emphasis of the last claim or to exclude the possibility of the Act being made applicable by the wording of the contract elsewhere and aside from that portion thereof relating to the specified compensation and how it should be paid. The contract having been made after the enactment of the law, and the services having been rendered after it had gone into effect, the *mere absence* of any provision in the contract calling for overtime pay or of any provision specifying what should constitute a day's work, cannot alone defeat plaintiff's right, since the law would supply the place of such absent provisions, unless it is clearly inapplicable to the contract on account of the other reason given, namely, the claim that the contract can in no

way be so regarded or interpreted as to permit the ascertainment of a day's wage, but must be deemed to have fixed plaintiff's compensation at a stipulated sum per calendar month. It is thus seen that defendant's contention comes down to the proposition that the Adamson Law affects only such contracts as refer to a day's work or a day's pay and merely provides that, in such contracts, a standard day of eight hours shall be understood instead of the theretofore existing standard day; and that where, under his existing contract of employment, an employer's compensation was not reckoned on the basis of "a standard day" nor with reference to a day's work, there is nothing in his contract to which the new standard could be applied and, therefore, the rate of compensation is not affected by the Act.

It is true that the Act neither abrogates existing contracts nor makes new ones, and it may very well be that if an employee makes a contract to which it is impossible to apply the law, then the employee may not be able to claim any benefits under that law. But it cannot be successfully maintained that there is anything in the wording of the Act showing that the *intention* was that the law should apply to some and not to all. The Act fixes eight hours "as the measure or standard of a day's work for the purpose of reckoning the compensation for services of *all* employees" engaged in the movement of interstate trains. And there is nothing elsewhere in the Act which can be construed as creating any distinction between employees so engaged, whether their contracts provide they are to be paid a certain rate per month, per mile, per day, or per run.

Neither is there anything in the circumstances under which the Act was passed or in the purposes sought to be accomplished by it, to justify the inference that there is any such distinction to be made in applying the Act to the various contracts of such employees. The circumstances calling for the Act and the purposes of its enactment are set forth in the decision of the

United States Supreme Court, in Wilson v. New, 243
U. S. 332, wherein the constitutionality of the law is
upheld. These were that two systems, concerning the
wages of employees engaged in the movement of
interstate trains, were in operation at and prior to
the passage of the Act. One, in force upon about
fifteen per cent of the railroads, had an eight-hour
standard of work and wages with additional pay
for overtime; the other, in force on eighty-five per
cent of the roads, required a stated mileage task of
one hundred miles to be accomplished in ten hours
with extra pay for any excess beyond that time. The
organizations representing the employees demanded
that a hundred-mile task be fixed for eight hours instead
of ten, the employees to receive the same compen-
sation for the eight hours as they had received for the
ten with extra compensation, calculated at an in-
creased rate, for overtime; that is, the time they were
employed above the eight hours in performing their
daily task. This demand, along with certain other
requirements in relation thereto, was refused by the
employers and a great strike was threatened. To
avert this, and to avoid paralyzing the commerce of
the nation, the Adamson Act was passed. It stepped
in between the disputing parties and fixed an eight-
hour standard day for work and wages, not fixing
the amount of the task to be done in that time,
but leaving the parties to determine that; and, while
refusing to concede some of the things demanded by
each side and granting others, the Act provided that
while the dispute lasted, the pay for overtime
"necessary" in the accomplishment of the specified
task should be not less than the *pro rata* rate or, in
other words, the overtime pay was confined to the
regular rate. The law was not only made obligatory
on both parties, but it fixed the wages during the
period of their dispute by prohibiting a lower rate
of wages under the new system than was paid under
the old. So that the effect of the Act was to re-
quire the employer to permit the employee to per-

form the stipulated task in eight hours instead of ten
for the same compensation he had theretofore received
for ten hours work, and, if it necessarily required
more than eight hours' time, the employee was to be
paid *pro rata* for the overtime. Such being the cir-
cumstances under which the Act was passed and the
purpose for which it was enacted, there is no reason
why it should not apply, as the terms of the Act ex-
pressly say it shall apply, to *all* employees so engaged,
unless indeed the terms of the contract of employment
unequivocally and affirmatively show that it is one to
which it is impossible to apply the law because not
dealing in any manner with the things established by
the law. Any other view would tend to curtail the
operation of the law and prevent the accomplishment
of the very purpose for which it was passed.

It only remains then to see whether plaintiff's
contract is of such a nature that it is impossible to
apply the law to it.

The case was tried upon an agreed statement of
facts, and from this it appears that plaintiff's run was
from St. Joseph, Missouri, to Grand Island, Nebraska
and vice versa, a distance of two hundred and fifty-
two miles; that the above run was to be "his day's
work," both when he worked in the daytime and when
he worked at night; that he was to make two round
trips between the points aforesaid and then "lay over"
one day, which means that he was to work four days
out of every five in the month; that he was to be paid
*"at the rate of"* $82.50 per month. Having to work
four days out of every five in the month, it follows that
he was required to work twenty-four days in January,
twenty-two in February, twenty-five in March and
twenty-four days each in April and May, and for
these respective number of days in each month he was
to get $82.50; and his compensation for each day's
work could be determined by dividing $82.50 by the
number of days he was required to work in any
particular month. So that not only did the contract
provide what his day's work should be (a run of

two hundred and fifty-two miles), but it afforded a
basis from which his compensation for doing each
day's work could be reckoned. Not only that, but
"Schedule A" kept by defendant showing the days
plaintiff worked between January 1, 1917, and May
19, 1917, both inclusive, the "lay over" days, the
time at which he left and arrived at St. Joseph, the
time he left and arrived at Grand Island, also contained
a column headed "Rate per day per cal. Mo.," and
in this column was stated the daily wage plaintiff
was entitled to receive and which he was paid for
each day he actually worked. Said schedule also showed
the number of hours and fractions thereof plaintiff
was necessarily engaged each day over the standard
eight hours. And this schedule shows also that
plaintiff's compensation was calculated and paid *per
day*. Clearly, plaintiff's contract furnished the data
from which his daily wage could be, and was, as-
certained. The contract specified a run of two hundred
and fifty-two miles as a day's work for which he was to
receive a compensation which was easily computable,
and was in fact computed, in terms of a daily wage.
The Adamson Law merely substituted eight hours
labor as a day's work for the purpose of measuring
plaintiff's compensation for what the contract specified
as necessary for a day's wage, with a further require-
ment that he should not receive, for said eight hours
labor, less than he had received for his specified
day's task, and if it necessarily required more than
eight hours to perform the specified task he should
be paid *pro rata* for the overtime.

We are unable to see any difficulty, much less
impossibility, in applying the Adamson Law to plain-
tiff's contract, nor reason why it should be held to be
outside of and beyond the operation of said law.

There is no question as to the amount of over-
time plaintiff was necessarily employed during the
time for which he sued, except for the thirty minutes'
time occupied in "preparatory service" before the

train left on each trip.  There is no question but that he performed this thirty minutes preparatory service at and just prior to starting on each trip.  This was work that was required and necessary in order to make the trip, as much so as the actual running of the train itself.  Such being the case, this thirty minutes "preparatory service" was as much within the provisions of section 3 of the Act requiring the employee to be paid *"for all necessary time in excess of eight hours,"* as any other time occupied in doing the work of running the train.

We think the judgment of the trial court, which was for the excess time figured correctly on the *pro rata* basis of the contract rate for the regular time, should be affirmed and it is so ordered.  All concur.